## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **DF VENTURES, LLC, and DAYMOND JOHN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | Civil Action No.    -CV- |
| | ) | |
| **v.** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **FOFBAKERS HOLDING COMPANY, LLC,** | ) | |
| **JABEZBAKER, LLC, BBQ CONSULTING LLC,** | ) | |
| **JAMES A. BAKER a/k/a AL BAKER**, *individually*, | ) | |
| **BRITTANI BO BAKER**, *individually*, **and** | | |
| **SABRINA BAKER**, *individually*, | | |
| | | |
| **Defendants.** | | |

### <u>VERIFIED COMPLAINT</u>

Plaintiffs DF VENTURES, LLC ("DF Ventures"), and DAYMOND JOHN ("John") (together, "Plaintiffs") by and through their undersigned counsel, file the following Verified Complaint against defendants FOFBAKERS HOLDING COMPANY, LLC ("FOFBakers Holding"), JABEZBAKER, LLC ("Jabezbaker"), BBQ CONSULTING LLC ("BBQ Consulting"), JAMES A. BAKER a/k/a AL BAKER ("Al Baker"), BRITTANI BO BAKER ("Brittani Baker"), and SABRINA BAKER ("Sabrina Baker") (defendants Al Baker, Brittani Baker, and Sabrina Baker are collectively referred to as the "Baker Defendants") (hereinafter "Defendants").  In support thereof, Plaintiffs state as follows:

### I.    INTRODUCTION

1.    This action arises out of Defendants' willful and malicious smear campaign against Plaintiffs and their affiliated entities, employees, and advisors (collectively, the "Affiliates") with the intent of "going viral", in an effort to disparage Plaintiffs, and the Affiliates and cause irreparable harm to their businesses and reputations.

1

2.      Plaintiff DF Ventures, Defendant FOFBaker Holdings, and a third entity, Rastelli Partners, LLC, together own a BBQ food company, FOFBakers, LLC ("FOFBakers" or the "Company"). Plaintiff John, through his entity DF Ventures, is a minority stakeholder and the sole non-managing member of the Company. Upon information and belief, defendants Al Baker and Brittani Baker are members of defendant FOFBaker Holdings, through which they own their membership interest in the Company.

3.      On or about May 18, 2023, Defendants publicized defamatory statements about Plaintiffs in an article published in the LA Times.  But Defendants did not stop there. Over the next few days, Plaintiffs continued to spew false and disparaging statements about Plaintiffs in social media postings on multiple platforms (*e.g.*, TikTok, Facebook, Twitter and Instagram), including falsely accusing Plaintiff John of siphoning off company funds and trying to steal Defendants' business.

4.      Contrary to Defendants' misrepresentations, Plaintiff John is a non-managing Member of the company who has *no* control over the company's books and records, has never been a signatory to, nor had any access to any bank account associated with John's dealings with the Defendants. Instead, John's duties are limited to acting as a "brand ambassador", using his connections to seek out potential sales contacts or marketing opportunities for the company.

5.      Moreover, Plaintiff John is operating at an overall financial loss from his business dealings with Defendants, while Defendants acknowledge they have reaped at least $659,000 in profits alone.

6.      In engaging in this smear campaign, Defendants have breached, and continue to breach, various contractual obligations, including confidentiality and non-disparagement, as well as committing unlawful defamation.

7.    Defendant Al Baker has also breached, and continues to breach, his fiduciary duties to DF Venture as a Manager of FOFBakers, by sabotaging the business so that no one will want to buy the product, thereby reducing the potential value of the company and damaging Plaintiffs' ability to recoup their investment.

## II.    PARTIES

8.    Plaintiff John is a resident of New York and is the founder and CEO of the apparel company, "For Us, By Us," more widely known as, "FUBU." In addition, John is the CEO of "The Shark Group" consulting company.

9.    John is a trailblazing entrepreneur who, in addition to maintaining his extensive business portfolio, devotes his time to guiding individuals, brands, and organizations seeking to reach their full potential.

10.    Since 2009, John has served as an investor on the ABC television program "Shark Tank." As an investor on "Shark Tank," John has invested into numerous startup companies, after hearing pitches from, and negotiating with, aspiring entrepreneurs. John has invested in a number of companies that later went on to achieve commercial and financial success.

11.    John has won the Crain's Business of New York Under Forty Award, the NAACP Entrepreneur of the Year Award, Ernst & Young's New York Entrepreneur of the Year Award, the Congressional Achievement Award for Entrepreneurship, and was appointed as a Global Ambassador to the White House by President Obama.

12.    John is currently a Celebrity and Player Advisory Council Member to the US Tennis Association Foundation and a Board Member of Petco Love (Petco's charitable foundation) in addition to many other philanthropic positions.

13.     In addition, John was recently named the American Cancer Society's 2023 National Ambassador.

14.     Three years ago, John launched and now annually curates Black Entrepreneurs Day ("BED"), which is an annual celebration of Black business and culture. The event is taped in front of a live audience at Harlem's world-famous Apollo Theater and is viewed by over 7.5 million people annually. The event includes conversations, hard-hitting roundtables with top brand executives, and musical performances by iconic artists. Through BED, John has assisted in donating over $700,000 ($25,000 grants to twenty-eight small black-owned businesses) and provided one-on-one mentoring sessions with such businesses. The event has won 4 Webby Awards and is currently planning for its fourth year of the event to be held in October 2023.

15.     John's extraordinary business acumen and mission to help others discover their business potential have caused him to become one of the most sought-out motivational speakers in the country.

16.     John devotes a significant portion of his time to speaking engagements, brand endorsements, and other public-facing opportunities to support his wide portfolio of business ventures and educate entrepreneurs of all levels nationwide.

17.     John is also the author of four bestselling books, most recently including his first children's book, "Little Daymond Learns to Earn", which was a New York Times, Wall Street Journal, and Amazon bestseller that teaches children and their families financial intelligence and the importance of entrepreneurship.

18.     Over a period of decades, John has painstakingly developed his own personal brand as well as those of his business interests. The goodwill he has generated through his efforts is

incalculably valuable and is a main channel through which he develops new business relationships and maintains existing business relationships.

19.     Plaintiff DF Ventures is a limited liability company formed in the state of New York with principal place of business at 958 Salt Point Turnpike, Pleasant Valley, New York.

20.     John formed DF Ventures to be the entity through which he holds his interest in FOFBakers, LLC.

21.     Defendant Al Baker is an individual who, upon information and belief, is domiciled in the State of Florida.

22.     Defendant Brittani Baker is an individual who, upon information and belief, is domiciled in the State of California and is defendant Al Baker's daughter.

23.     Defendant Sabrina Baker is an individual who, upon information and belief, is domiciled in the State of Florida and defendant Al Baker's wife.

24.     Defendant FOFBakers Holding is a limited liability company registered in the State of Ohio with its principal place of business at 820 Center Road, Avon, Ohio 44011.

25.     Defendant Jabezbaker is a limited liability company formed in the State of Ohio with a last known principal office at 17408 Gulf Boulevard, Apt. 903, Redington Shores, FL 33708 and/or 675 S. Gulfview Boulevard #1004, Clearwater, FL 33767 and is, upon information and belief, controlled by Al Baker, Sabrina Baker and/or Brittani Baker.

26.     Defendant BBQ Consulting is a limited liability company formed in the State of California on September 2, 2022 with its registered agent for service of process being 1810 Downtown Restaurant, Corp., 105 W. 9th Street, Los Angeles, CA 90015 and with its last known principal office at 3033 West Olympic Boulevard, Suite 205, Unit #1110, Los Angeles, CA 90006 and is managed, upon information and belief, by Brittani Baker.

### III.    JURISDICTION AND VENUE

27.    This Court has original jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

28.    This Court has personal jurisdiction over the parties pursuant to a forum selection clause in a settlement agreement and an amendment to an operating agreement, pursuant to which the parties agreed that the United States District Court for the District of New Jersey shall retain jurisdiction to enforce the terms of the settlement agreement and to grant injunctive relief related to the operating agreement.

29.    Venue is proper because FOFBakers, LLC's principal place of business is in County of Gloucester, New Jersey, and its books and records are maintained at that location.

### IV.    FACTUAL BACKGROUND

#### a.    History of the Relationship Between Plaintiffs and Defendants

30.    Defendants pitched their business, Bubba's Q, on the television show "Shark Tank," wherein plaintiff John and other successful entrepreneurs bid on stakes in fledgling businesses in an attempt to help those businesses succeed. Defendants accepted plaintiff John's bid to partner with Defendants in their meat business.

31.    The initial on-air verbal agreement on "Shark Tank" was that John would invest $300,000 for a 30% stake in the venture contingent on securing a large meat processing company to license the patent.

32.    Soon thereafter, it became apparent that the venture was not going to be able to immediately secure a licensing deal from a meat processing company. As a result, plaintiff John

and defendant Al Baker focused on securing a larger co-packer to handle larger volume orders and high demand at more affordable pricing.

33.    Prior to meeting the Rastellis and forming FOFBakers, plaintiff John assisted Defendants Al Baker and Brittani Baker in expanding their business by helping introduce them to, and assisting them with vetting, various co-packers in the United States and Canada, making introductions to synergistic relationships, promoting the business, procuring opportunities to expand the business via trade shows, and bankrolling the venture's expenses (even including money for Al Baker's personal expenses) over a two-year period -- during which time plaintiff John never received any money at all from the sale of any of the products.

34.    In 2015, FOFBakers was organized to develop, market, sell, and distribute the food product line known as Bubba's Q De-Boned Baby Back Rib Steak and Bubba's Q World Famous, and to develop, market, sell, and distribute food product line extensions that complemented the existing product line and the "Bubba's Q" brand (the "Business").

35.    FOFBakers was formed, and is intended to operate, pursuant to its Limited Liability Company Operating Agreement dated November 11, 2015 (the "Operating Agreement"). FOFBakers is owned by FOFBakers Holding, DF Ventures, and Rastelli Partners, LLC. A true and accurate copy of the Operating Agreement is annexed hereto as **Exhibit A**.

36.    In order to accommodate this new three-party arrangement, Plaintiff John invested additional money into FOFBakers and agreed to reduce his ownership percentage to 20%.

37.    FOFBakers operates the Business from its principal place of business at 300 Heron Drive, Swedesboro, County of Gloucester, New Jersey 08085, and its books and records are maintained at that location.

38.     Pursuant to Section 4.1(a) of the Operating Agreement, the management of FOFBakers is vested in two Members who have been appointed as managers, Raymond M. Rastelli, Jr. ("Rastelli Jr.") and defendant Al Baker (collectively the "Managers").

39.     Section 4.1(d) of the Operating Agreement provides, in relevant part, as follows:

*The Managers shall have full, exclusive, and complete discretion, power, and authority, subject in all cases to the other provisions of this Agreement, to manage, control, administer, and operate the business and affairs of the Company for the purposes herein stated, and to make all decisions affecting such business and affairs.*

40.     Section 5.2 of the Operating Agreement provides, in relevant part, as follows:

*Except as otherwise provided herein, or in any employment agreement between the Company and a Member, the Members (other than the Managers), shall not participate in the management or control of Company business, nor shall the Members transact and [sic] business for the Company, nor shall the Members have the power to act or bind the Company, said powers being vested exclusively in the Managers.*

41.     John is a Member of FOFBakers, but is the only Member who does not serve as a Manager.

42.     Further, Section 6.1(d) of the Operating Agreement provides, in relevant part, as follows:

*Daymond John, individually, has agreed to serve as a brand ambassador and on-air television personality for the Company, to provide or cause to be provided by [DF Ventures] sales contacts to the Company, and to provide or cause to be provided by [DF Ventures] marketing, promotion, product development, sales, and advertising services and support to the Company.*

43.     Section 11.1 of the Operating Agreement concerns confidentiality (the "Confidentiality Provision"), and provides, in relevant part, as follows:

*Each of the Members shall, during the term of this Agreement and at all times thereafter, maintain in confidence all confidential and proprietary information and data of the Company and of the other Members and their Affiliates, (each, a*

*"disclosing party") disclosed to it (the "Confidential Information"). Each of the Members further agrees that it shall not use the Confidential Information during the term of this Agreement or at any time thereafter for any purpose other than the performance of its obligations or the exercise of its rights under this Agreement. The Company and each Member shall take all reasonable measures necessary to prevent any unauthorized disclosure of the Confidential Information by any of their employees, agents or consultants.*

44.     Section 11.3 of the Operating Agreement relates to the Confidentiality Provision, and provides, in relevant part, as follows:

*Each Member acknowledges and agrees that any breach of the provisions of Section 11.1 of this Agreement is likely to result in irreparable injury to the Company, the other Members and their respective members, shareholders, partners, officers, affiliates, employees, and agents, and that the remedy at law alone will be an inadequate remedy for such breach, and that in addition to any other remedy they may have, the Company the other Members, or their respective members, shareholders, partners, officers, affiliates, employees and agents shall be entitled to specific performance of Section 11.1 of this Agreement by such Member and **to seek both temporary and permanent injunctive relief** (to the extent permitted by law)…*

45.     In or around January 2019, Ray Rastelli Jr., on behalf of Rastelli Partners LLC (Rastelli Jr. and Rastelli Partners LLC together, the "Rastelli Parties"), brought a civil suit against Defendants regarding, *inter alia*, Defendants' continued failure to meet their obligations under the Operating Agreement (the "Prior Dispute").

46.     FOFBakers Holdings and Al Baker consented to cooperate pursuant to a court order dated February 15, 2019.

47.     On February 22, 2019, the Managers participated in binding arbitration and the Arbitrator ruled in favor of the Rastelli Parties' on all issues presented.

48.     On or around September 5, 2019, the Rastelli Parties, Defendant FOFBaker Holding, and Plaintiff DF Ventures entered into a settlement agreement and release (the "Settlement Agreement") to resolve in full the Prior Dispute brought by the Rastelli Parties and to address FOFBakers Holdings' request to re-characterize some of their economic benefits set forth

in the Operating Agreement to an ongoing royalty on gross sales. The Baker Defendants also signed the Settlement Agreement in their individual capacities.

49.     Section 4 of the Settlement Agreement (the "Release") provides, in relevant part, as follows:

> *In consideration of the promises in this Agreement, each Party and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker on behalf of themselves and all persons or entities claiming by, through or under them (together, the "Releasors"), do hereby release, remise, acquit and forever discharge each other, and all related persons and entities…from any and all actions, causes of action, claims, suits, demands, covenants, debts, obligations, accounts, contracts, agreements, promises, controversies, liabilities, judgments, damages, losses, costs, charges, expenses, fees, attorneys' fees and executions, of every kind and nature whatsoever either at law or in equity, contingent or fixed, known or unknown, that the Releasors had, have or claim to have against the Releasees from the beginning of the world to this date including, but not limited to, all claims arising from, connected with, or relating to, the matters which are the subject of the Litigation; …*

50.     Section 5 of the Settlement Agreement (the "Non-Disparagement Clause") provides in relevant part as follows:

> *Each Party [Rastelli Partners, LLC, Raymond M. Rastelli, Jr., DF Ventures, LLC, FOFBakers Holding Company, LLC, and James A. Baker a/k/a Al Baker] and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker forever agree not to make any written or verbal remarks or statements (<u>even in the form of an opinion</u>) about any other Party to anyone including, but not limited to, any such other Party's employees, vendors and customers, current and/or prospective, and those of any entity any such other Party operates, has control of or has any interest in, that are <u>in any way negative, disparaging or false</u> or which <u>could adversely impact the reputation, goodwill, credibility or value</u> of any such other Party or entity or could discourage current and/or prospective customers from buying products from them…Each Party and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker forever agree not to interfere with any other Party's business relationships, current and/or prospective, and those of any entity any such other Party operates, has control of or has any interest in.*

51.     Defendants FOFBakers Holding, Al Baker, Jabezbaker, Brittani Baker and Sabrina Baker were each signatories to the Settlement Agreement.  Defendants Jabezbaker, Brittani Baker

and Sabrina Baker acknowledged and agreed to Sections 3, 4, 5, 9, 10, 11, 12, 13, 14 and 15 therein.

52.    Additionally, Plaintiff DF Ventures, Defendant FOFBakers Holding, Rastelli Brothers, Rastelli Partners, Jabezbaker, and defendant Al Baker, on behalf of himself and defendants Sabrina and Brittani Baker, signed a supplement to the Settlement Agreement (the "Supplement").

53.    A true and accurate copy of the Settlement Agreement and Supplement (together, the "Settlement Documents"), including the amendment and addendum discussed below, is annexed hereto as **Exhibit B**.

54.    Pursuant to Section 6 of the Supplement, the prevailing party in any litigation in connection with the original Operating Agreement or the Settlement Agreement and Amendments is entitled to  reasonable attorney's fees and costs from the non-prevailing party.

55.    On September 5, 2019, Plaintiff DF Ventures , Rastelli Partners, and Defendant FOFBakers Holding signed an Amendment to the Operating Agreement (the "Amendment"), and Brittani Baker, Al Baker, Rastelli Brothers, and Jabezbaker, signed an Addendum to the Operating Agreement ( the "Addendum") but the above-cited provisions remained intact. *See* Ex. B.

56.    Pursuant to the Addendum, Al Baker, Jabezbaker and Britani Baker agreed to certain terms in the Amendment including, but not limited to, Sections 4, 6, 9, 11, 12, 13 and 14 therein.

57.    Defendants were represented by counsel throughout negotiation of the Settlement Agreement and the Operating Agreement Amendment and Addendum.

58.    In addition to FOFBakers Holding and Al Baker, Jabezbaker, Sabrina Baker and Brittani Baker were significantly involved in settlement negotiations, and all were represented by counsel throughout the negotiation process.

59.    Defendants received significant compensation through the Settlement Agreement and Amendments, including an upfront lump sum payment of $33,333.33 and monthly payments of $8,333.33 for a period of twelve months. The Defendants also sought to restructure their streams of income flowing from the Company, so the Amendment restructured their interest from profit distributions to regular ongoing royalty payments on gross sales.

60.    The Amendment also provides the structure for payment of royalties on gross sales were to be paid to the Baker Defendants, which were payable to the Baker Defendants through the entity Jabezbaker.

### b.    Defendants' Breach of their Contractual Confidentiality and Non-Disparagement Obligations

61.    On or around May 18, 2023, the LA Times published an article (the "Article") titled "*Ex-NFL Player Thought 'Shark Tank' would Launch His Barbecue Empire, It Became a Nightmare, He Says.*" A true and accurate copy of the Article is attached hereto as **Exhibit C**.

62.    In the Article, Defendants discuss and disclose Confidential Information in violation of the Confidentiality Provision under the Operating Agreement, including, but not limited to:

    a.    A December 2015 email related to monthly profit projections for Bubba's Q, which is operated by FOFBakers under the Agreement.

    b.    Multiple additional emails between defendant Al Baker, Rastelli Food, and Larry Fox (who was serving as the product manager overseeing DF Venture's investment

and John's obligations), regarding specific financial concerns related to FOFBakers, including profit or disbursement information;

      c.      Negotiations and financial information related to an agreement to sell FOFBakers products at Carl's Jr. and Hardee's;

      d.      An email between defendant Brittani Baker and "Rastelli executives" about the operation of a software system containing financial information; and

      e.      Information regarding FOFBakers' profits.

63.      The Article notes that the LA Times reviewed documentation of the above-described Confidential Information while drafting the Article – documentation that the LA Times presumably obtained from Defendants, in violation of defendant FOFBaker Holding's contractual obligations under the Operating Agreement's confidentiality provision.

64.      Further, in the Article, Defendants make a series of disparaging or defamatory statements, including, but not limited to:

      a.      Falsely accusing Plaintiffs of "misleading them, trying to take over their business and depriving them of the profits from potentially lucrative partnerships;"

      b.      Falsely accusing Plaintiff John of "ceasing" communications with Defendants until one month ago when the LA Times began to draft the Article;

      c.      Falsely accusing Plaintiff John of "economically marginalizing" them;

      d.      Falsely asserting that the $659,000 of profit Defendants have received through sale of Bubba's Q products – which is not the only financial compensation Defendants have received – is a suspiciously low number compared to the gross sales of the products, and then insinuating that Plaintiffs and the Rastelli Parties have improperly withheld a sum of money from them;

13

e.      Falsely accusing Plaintiffs of taking advantage of Defendants during negotiations; and

f.      Falsely accusing Plaintiffs of withholding FOFBakers financial information or profits from Defendants.

65.    The LA Times reporter who wrote the Article reached out to Plaintiff John for comment, but Plaintiff John was unable to comment on many questions due to his confidentiality obligations under the Operating Agreement and Settlement Agreement as a Member of FOFBakers.

66.    At the same time, Defendants began – and actively continue – to engage in a malicious social media smear campaign directed at tarnishing Plaintiffs' and their Affiliates' reputations, further exposing Confidential Information, and making disparaging comments and false accusations against Plaintiffs to Plaintiffs' and/or Affiliates' extreme detriment.

67.    The same day as the Article was published, on or around May 18, 2023, a TikTok account, "@bubbasQfoodtrucks", (the "TikTok Account") posted a video entitled "Did you see my dad & I on Shark Tank?" (the "First Video") that contained disparaging remarks about plaintiff John.[12]

68.    Upon information and belief, the TikTok Account is operated and controlled by defendants BBQ Consulting and Brittani Baker.

69.    Across the homepage of the TikTok Account, defendant Brittani Baker has branded a new slogan for the Company, "Daymond John & Rastelli Food ARE trying to steal my families [sic] business."

---

[1] The TikTok Account can be viewed at the following link: https://www.tiktok.com/@bubbasqfoodtrucks
[2] Brittani Baker has also reposted most, if not all, of the below-mentioned videos from the TikTok on her personal Instagram account, @brittanibobaker, as well as on Facebook, in an attempt to maximize her audience.

70.     In the First Video, defendant Brittani Baker falsely and disparagingly claims that her business has been a "nightmare" since partnering with Plaintiff John, and makes a vague and unfounded accusation that other "small businesses" have been negatively impacted by partnering with John.

71.     On or around May 20, 2023, the TikTok Account posted another video entitled "Sharing my Shark Tank Nightmare?" (the "Second Video"). In the Second Video, defendant Brittani Baker hurls a false and thinly-veiled accusation that plaintiff John siphoned off company funds, "*where did the money go?*", again claims that partnering with John was a "nightmare," discloses a private email from John, and utilizes the "hashtags" #SharkTankNightmare and #wheresthemoney, presumably in an attempt to get the hashtags to start "trending" on the TikTok platform and potentially "go viral."

72.     On or around May 21, 2023, the TikTok Account posted another video, entitled "Partnering with Daymond John Has been a Nightmare?" (the "Third Video"), wherein defendant Brittani Baker shared private emails from plaintiff John related to the hiring of an individual to help with the Bubba's Q website and disparaged John in his impact on small businesses.

73.     On or around May 21, 2023, Plaintiffs served Defendants with a cease and desist letter (the "Cease and Desist Letter"), indicating that Defendants were in breach of the Agreements and demanding that Defendants cease making publicly disparaging or defamatory remarks against Plaintiffs, and further, cease publicly revealing Confidential Information. A true and accurate copy of the Cease and Desist Letter is attached hereto as **Exhibit D**.

74.     Defendants have entirely ignored the Cease and Desist Letter, and have continued to post outrageous, damaging, and false video content with the goal of inflicting harm on Plaintiffs.

15

75.    On or around May 22, 2023, the TikTok Account posted yet another video entitled "I don't know who needs to hear this?" (the "Fourth Video") wherein defendant Brittani Baker states that Plaintiff John has had a negative impact on other small businesses; shares photos of John with disparaging captions such as "I am NOT to be trusted with anything," "I will Gaslight you, take your money, your time and self esteem," and "I repeat DO NOT TRUST ME"; claims that she was "forced to settle" with Plaintiff John in the Prior Dispute.  Defendant Brittani Baker further professed her desire to spread her allegations publicly as much as possible to "get her story out," and claimed that she would have "so much more information coming soon".

76.    On or around May 22, 2023, the TikTok Account posted yet another video entitled "The plot thickens what do you guys think about this" (the "Fifth Video") wherein defendant Brittani Baker discloses portions of the Operating Agreement containing net profits, member names, and member voting interests, as well as documents containing purported profit projections for FOFBakers, in violation of the Operating Agreement's confidentiality provision.

77.    On or around May 22, 2023, the TikTok Account posted yet another video titled "Tell me what you think about this……you know the receipts are included" (the "Sixth Video") wherein defendant Brittani Baker claims that her family and other small businesses have been impacted by the "Daymond John nightmare," shares emails with Plaintiff John, discusses alleged details of one of John's business deals, claims that John is attempting to push Defendants out of their business, and proclaims "there is still more to this story."

78.    On or around May 22, 2023, the TikTok Account posted yet another video titled "What's the common denominator in all this mess?" (the "Seventh Video") wherein defendant Brittani Baker alleges that John pressured another small business into making a deal that was allegedly detrimental to it, asking "Where's the money?," speculating that Plaintiffs have been

16

withholding funds from Defendants and another small business, and querying, "so what's the common denominator in all this mess?" while posting a photo of John with the caption "This Man".

79.     On or around May 22, 2023, the TikTok Account posted yet another video titled "The People Arent' [sic] Falling For the People's Shark B.S.?" (the "Eighth Video") wherein defendant Brittani Baker discusses a portion of the Amendment to the Operating Agreement related to Rastelli Foods' payment of John, accuses John of a "bold face lie" related to the profit margins of Bubba's Q, claims that John is trying to "play people," insinuates that John has been dishonest about the profits of the business and that he has left millions of dollars unaccounted for, and asks "Where did the money go?"

80.     On or around May 23, 2023, the TikTok Account posted a video containing Brittani Baker revealing confidential information including private emails from a FOFBakers manager containing profit projection information, and alleging falsely that Plaintiffs and the Rastelli Parties had been withholding profits from Defendants.

81.     On or around May 24, 2023, the TikTok Account posted a video with images of John and the Article, thanking the journalist for helping to "expose" Defendants' "#SharkTanknightmare". Notably, because Brittani Baker also used the hashtag "#DaymondJohn", this video will appear any time that an individual searches John on this social media site.

82.     On or around May 19, 2023, the TikTok account @albubbabaker111 ("Al Baker TikTok Account") posted a video titled "Did you see my dad & I on Shark Tank," (the "Ninth Video") which directs viewers to the Article and claims that Plaintiff John failed to help defendant Al Baker "scale [his] business".

83.     Upon information and belief, the Al Baker TikTok Account is owned and operated by Al Baker.

84.     On or around May 20, 2023, the Al Baker TikTok Account re-posted the TikTok Account's Second Video with the additional caption "Where did the money go?"

85.     On or around May 21, 2023, the Al Baker TikTok Account re-posted the TikTok Account's Third Video, with the additional caption "Business since #SharkTank has been a nightmare saddened to find out we weren't the only small business affected by this. You can read the full article with the link in my bio or on LATimes.com. #WHERESTHEMONEY?"

86.     On or around May 21, 2023, the Al Baker TikTok Account reposted the TikTok Account's Third Video with additional voiceover of defendant Al Baker stating that defendant Brittani Baker is exposing "corporate injustices" at the hands of Plaintiffs and encouraging his followers to go to the TikTok Account, stating that he **"wants this to go viral."**

87.     Defendant Sabrina Baker has also re-posted the LA Times article seeking to rally viral support.

88.     Subsequently, on or around May 23, 2023, when the TikTok Account was flagged as under review, defendant Brittani Baker resorted to posting on another social media platform, encouraging her followers to re-post the false and disparaging statements.  For example, defendant Brittani Baker pleaded, "Can y'all please share this as much as you can EVERYWHERE!?"

89.     Comments by third parties on these posts clearly show that many are accepting the false and disparaging statements regardless of the truth.

90.     On or around May 24, 2023, the Al Baker TikTok Account posted a video wherein Al Baker indicates the "NFL Alumni" are joining his "campaign" to "expose" Plaintiffs and the Rastelli Parties, and announcing that he and Brittani Baker were starting a new show on the NFL

Alumni Media platform to release "raw and authentic conversations" about their "nightmare," which will include guest speakers.

91.     Defendant Al Baker is also using the well-recognized NFL trademark logo and music as part of his ongoing disparagement of Plaintiffs and their Affiliates.

92.     On or around May 21, 2023, defendant Brittani Baker created a GoFundMe page, on which she has posted defamatory and disaparaging statements about Plaintiffs and the Rastelli Parties, including that, "Our product has generated over $18 million in sales. However, despite this, we have received less than 4% of the revenue before taxes spread out over the past 8 years. While facing an attempted takeover of our company and Patent. We refuse to let injustice prevail!"

93.     Defendants reference their false claim related to their $659,000 profit in comparison to the gross product sales figure – discounting entirely other forms of compensation they have received – multiple times in the above-referenced videos.

94.     The above-referenced videos have been viewed hundreds of thousands of times on TikTok, Instagram, and Facebook, and have generated hundreds of comments on the videos themselves, as well as comments on John's own social media accounts.

95.     At all times, Plaintiffs have acted within the scope of their obligations to Defendants under the Operating Agreement and Settlement Agreement.

96.     As such, Defendants' numerous statements to the contrary are entirely false, and serve only to mislead the public.

97.     As Defendants well know, Plaintiff John is not a Manager of FOFBakers and thus has no role with regard to bookkeeping or managing FOFBakers. Accordingly, as a *non-managing* Member of FOFBakers, John has no access to, or control over, the financial documentation discussed by Defendants.

98.     Defendants' "where's the money?" accusation is even more egregious because Defendant Al Baker *is* a Manager of FOFBakers, with access to – and responsibility for – such financial information.

99.     Defendants' public statements that they only received $659,000 after $16 Million of products have been sold, then demanding "where's the money?" – thereby insinuating that more than $15 Million of revenue is missing-- are defamation by implication, as Defendants are intentionally omitting the well-known meat-industry fact that net profit margins are razor-thin – typically in the range of 1-5% of sales.

100.    Not only are Defendants' statements false, but practically every post concerns matters that pre-date the Settlement Agreement, all matters which they had every opportunity to raise prior to the Settlement Agreement.

101.    Prior to the Settlement Agreement, the Defendants were provided all documentation requested by their counsel to review any and all concerns, and then after such information was reviewed, the Defendants entered into the Settlement Agreement, which includes the Release.

102.    Further, as Defendants should already know (due to Defendant Al Baker's role as a Manager and related access to financial records), Plaintiff John is operating at an overall financial loss from his decision to become involved with the Bubba's Q business.

103.    Despite operating at a financial loss, John has tried to help grow the company by using his limited, defined role as a brand ambassador for FOFBakers to significantly assist the company in an attempt to benefit Defendants.

104.    Indeed, Defendants' disparaging statements about John in the posts are directly contradicted by the statements on the website used to promote the product.

105.    Specifically, in an article dated January 12, 2021 (after the settlement of the Federal Court Action), which is published on the product website, defendant Al Baker praised John: "Daymond John is a great partner. He reached out to me on the show, and he's been true to form ever since.  He's never too busy and always willing to help."

106.    Similarly, only a few months ago, on February 15, 2023, in another article posted on the product website, defendant Al Baker attributed Defendants' success to Shark Tank (and by extension, John).

107.    Indeed, from the very outset of John's business dealings with Defendants, John utilized his vast network curated through his decades of successful business to provide contacts in retail, fast food, packing, food companies, cruise lines, professional sports teams, and other essential relationships for the business.

108.    Further, since the Covid-19 pandemic when supply chains were disrupted entirely and the venture had no supply of product, John through personal contacts was able to introduce a new supplier, that is now set to supply product to the venture on a regular basis at affordable prices.

109.    John has repeatedly secured conversations with major food and restaurant brands to help potential distribution of the Products. Mr. John's role was integral in landing FOFBakers' business deal with Carl's Jr.

110.    John arranged for booth space solely at his expense at one of the largest industry trade shows (NACS in Las Vegas), personally appeared at the show, and walked the floor to foster relationships while  also providing personnel from his own team to work the show.

111.    John made restaurant and store appearances and provided resources and personnel for retail launches solely at his expense.

112.    John's team visited and helped vet co-packing packing facilities with the Defendants in both the United States and Canada and paid for all expenses.

113.    John made numerous personal appearances, created videos, and even appeared in person at the Defendant's restaurant to help with an in-restaurant promotion solely at his expense.

114.    John consistently devotes time and energy to his obligations under the Operating Agreement by, among other things, making public and radio show appearances,

115.    Much of John's involvement with the Defendants, including providing travel and personnel, has come at his own personal expense, including paying all the Baker's and business expenses related to this venture prior to the Rastelli's involvement.

116.    As a result of these public statements by Defendants on various forms of social media and in the Article, John has suffered, and will continue to suffer, tangible negative impacts to his business relationships and reputation as a result of Plaintiffs' conduct.

117.    In the days since the above-mentioned Article and videos were posted, John has had several potential business ventures called into question.

118.    For example, one particular company ("Company A"), which had agreed to business terms for John to be a brand ambassador, had begun coordinating scheduling production logistics, and had moved toward executing a formal agreement, has expressed concern to John about the content of the videos and the Article and, as a result, has indicated a desire to reconsider the potential business relationship.

119.    There is a substantial likelihood that other prospective business ventures with other companies like Company A also could be jeopardized by the disparaging and defamatory statements publicized by Defendants. Such ventures can typically earn John in the range of $250,000 or more.

120.    Additionally, since the Article and videos were posted, a second company ("Company B"), after extending an official offer for a speaking engagement and an appearance, contacted Plaintiff John on or around May 22 saying that they "officially have to pull the offer for Daymond John and pivot to other Talent options."

121.    Similarly, there is a substantial probability that other businesses, like Company B, will catch wind of Defendants' disparaging and defamatory posts and cancel speaking events with John, which typically earn John $50,000-$75,000 per event.

122.    Enforcement of the lawful obligations owed by Defendants to Plaintiffs is appropriate and necessary to protect Plaintiffs' legitimate business interests, customer and employee relationships, goodwill, and FOFBaker's Confidential Information.

123.    Plaintiffs will suffer irreparable harm for which they cannot be adequately compensated by monetary damages alone if the preliminary and permanent injunctive relief requested herein is not granted.

## V.    CLAIMS AGAINST DEFENDANTS

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against all Defendants)

124.    Plaintiffs repeat and reallege paragraphs 1 through 122 of this Complaint with the same full force and effect as if fully set forth herein.

125.    Plaintiffs entered into valid and enforceable Operating Agreement with Defendants related to FOFBakers.

126.    Therein, Defendants acknowledged and agreed to abide by the Confidentiality Provision.

127.    Plaintiffs entered into valid and enforceable Settlement Agreement with Defendants related to the Prior Action.

128.    Therein, Defendants acknowledged and agreed to abide by the Non-Disparagement Provision.

129.    Defendants received due consideration for signing and entering into these contracts containing such non-disparagement and confidentiality provisions.

130.    Defendants have breached their Operating Agreement with Plaintiffs, as Defendants have wrongfully disclosed Confidential Information as defined in the Operating Agreement publicly, through various forms of social media and in the Article.

131.    Defendants' use of this Confidential Information, including financial information related to FOFBakers that is not publicly available, was not to fulfill their obligations under the Agreement.

132.    Defendants have breached their Settlement Agreement with Plaintiffs, as Defendants have willfully disparaged and defamed Plaintiffs and their Affiliates publicly, through various forms of social media and in the Article.

133.    Plaintiffs served Defendants with the Cease and Desist letter on or around May 21, 2023, but Defendants have continued to disparage Plaintiffs thereafter in the same public manner.

134.    Plaintiffs have suffered actual damages as a result of Defendants' breaches.  As such, Plaintiffs are entitled to monetary damages and injunctive relief against Defendants.

135.    Plaintiffs have suffered, and will continue to suffer, irreparable harm as a direct result of Defendants' breach of their confidentiality and non-disparagement obligations until such time as they are ordered to cease revealing Plaintiffs' Confidential Information and disparaging or defaming Plaintiffs.

136.    Injunctive relief is necessary as Plaintiffs are without an adequate remedy at law to prevent this harm to Plaintiffs.

## SECOND CAUSE OF ACTION
## DEFAMATION
## (Against all Defendants)

137.    Plaintiffs repeat and reallege paragraphs 1 through 134 of this Complaint with the same full force and effect as if fully set forth herein.

138.    Defendants have asserted numerous false statements regarding Plaintiffs.

139.    Defendants have also made other statements that, while facially true, were designed and intended by Defendants to imply a defamatory meaning, and such statements were in fact understood by others to be defamatory.

140.    Defendants have asserted such false statements with the intent to harm Plaintiffs' and their Affilates' reputations in the community, or to cause others to avoid Plaintiffs and/or their Affilates.

141.    Defendants have asserted such false statements publicly, through various forms of social media and the Article, to multiple third parties around the world.

142.    Defendants' assertion of such false statements was willful, malicious, and in reckless disregard of the adverse consequences to Plaintiffs.

143.    Plaintiffs have suffered actual damages as a result of Defendants' defamatory statements.  As such, Plaintiffs are entitled to monetary damages and injunctive relief against Defendants.

144.    Plaintiffs and their Affiliates have suffered, and will continue to suffer, irreparable harm as a direct result of Defendants' defamatory statements until such time as they are ordered to cease making defamatory statements against Plaintiffs, and are further ordered to remove any such defamatory statements from social media accounts within their custody or control.

145.     Injunctive relief is necessary as Plaintiffs are without an adequate remedy at law to prevent this harm to Plaintiffs.

### THIRD CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTIES
### (Against Defendant Al Baker)

144.     Plaintiffs repeat and reallege paragraphs 1 through 143 of this Complaint with the same full force and effect as if fully set forth herein.

145.     As Al Baker is a Manager of FOFBakers and controlling Member of FOFBakers Holding (a Member of the Company) he owes fiduciary duties to the Company and its Members.

146.     Such duties include, but are not limited to, the duty of trust, duty of confidence, duty of loyalty, duty of care and the duty of good faith and fair dealing.

147.     Defendant Al Baker violated these fiduciary duties through a variety of actions including, without limitation: (1) posting confidential information of FOFBakers with an intent to harm Plaintiffs and their Affiliates; (2) disparaging Plaintiffs openly by making harmful or false claims against them; (3) calling the business practices of FOFBakers into question in the public arena, thereby diminishing the public's opinion of the Company; and (4) failing to adhere to the terms of the Operating Agreement, for his own personal benefit, to the extreme detriment of Plaintiffs, the Rastelli Parties, and FOFBakers itself.

148.     Defendant Al Baker, through the above-mentioned actions, has acted purposely to sabotage FOFBakers' business and reputation, resulting in vendors not wanting to carry the product.  Thus, Defendant's actions have reduced the value of the Company, and have made it nearly impossible for plaintiff DF Ventures to recoup its investment in FOFBakers.

149. Such conduct also proximately caused damages to the Plaintiffs and the Company including, but not limited to, irreparable harm and damages to their reputation, profits, business, goodwill, credibility and value.

150. Plaintiffs have suffered actual damages as a result of Defendant Al Baker's breach of his duties of loyalty and care. As such, Plaintiffs are entitled to monetary damages and injunctive relief against Defendants.

151. Plaintiffs have suffered, and will continue to suffer, irreparable harm as a direct result of Defendant Al Baker's breach of the duty of loyalty until such time as he is ordered to cease engaging in actions contrary to his duty to FOFBakers and Plaintiffs

152. Injunctive relief is necessary as Plaintiffs are without an adequate remedy at law to prevent this harm to Plaintiffs.

## **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

### **(Against Defendant BBQ Consulting)**

153. Plaintiffs repeat and reallege paragraphs 1 through 152 of this Complaint with the same full force and effect as if fully set forth herein.

154. The Settlement Documents and Operating Agreement are valid contracts.

155. BBQ Consulting was, and is, aware of the Settlement Documents and Operating Agreement and their purpose since prior to said its conduct as set forth in this Verified Compliant.

156. BBQ Consulting intentionally interfered with, among other things, the Settlement Documents and Operating Agreement.

157. BBQ Consulting has no justification for its actions.

158. The Plaintiffs and the Company have been injured by BBQ Consulting's actions through lost sales or profits they would have otherwise made.

159.    As a result of BBQ Consulting's intentional actions, the Plaintiffs and the Company have suffered, and continue to suffer, irreparable harm and damages to their reputation, profits, business, goodwill, credibility and value.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief in the form of a Temporary Restraining Order and injunction preliminarily and until final hearing, and then permanently thereafter, with judgment entered as follows:

A.    For preliminary and permanent injunctive relief against Defendants including compelling Defendants to remove  all social media posts described above related to Plaintiffs and/or their Affiliates from the websites or applications to which they were posted, including, but not limited to, Facebook, Twitter, Instagram, and TikTok;

B.    For preliminary and permanent injunctive relief against Defendants including compelling Defendants to remove all social media posts described above related to the Article from the websites or applications to which they were posted, including, but not limited to, Facebook, Twitter, Instagram, and TikTok;

C.    For a restraining order against Defendants prohibiting them from directly or indirectly making further disparaging or defamatory remarks against Plaintiffs and/or their Affiliates or disclosing or discussing any further Confidential Information pursuant to the Operating Agreement or Settlement Agreement;

D.    For a restraining order against Defendants prohibiting them from directly or indirectly participating in interviews with media outlets related to their relationship and dealings with Plaintiffs and/or their Affiliates;

28

E.      For a restraining order against Defendants prohibiting them from continuing to directly or indirectly publicize, disseminate, refer to, re-post, or otherwise direct people to view the Article;

F.      For a restraining order against Defendants prohibiting them from continuing with their stated plan, described above, to host a radio or podcast show wherein they will directly or indirectly discuss their allegations against Plaintiffs and/or their Affiliates;

G.      For preliminary and permanent injunctive relief against Defendants, their family, their representatives, and any other agents acting on their behalf, directly or indirectly, to retain and preserve all evidence or documentation relevant to the matters discussed herein, including, but not limited to, communications, notes, memoranda, text messages or messages on any other messaging platform, telephone records, facsimilies, posts, videos, and email correspondence, in physical or electronic format;

H.      For entry of judgment in favor of Plaintiffs and against Defendants;

I.For an award of monetary damages for economic losses, damages for reputational harm, and other pecuniary and non-pecuniary losses, in an amount to be determined at trial;

J.      For an award of punitive damages based upon Defendants' willful and/or malicious conduct;

K.      For an award of the fees and costs associated with this action, including attorneys' fees, as well as interest;

L.      For such other and further relief as the Court deems just and proper.

Dated: May 25, 2023
New York, New York

Respectfully submitted,

/s/ Mercedes Colwin
Mercedes Colwin
*Pro hac vice admission pending*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **DF VENTURES, LLC, and DAYMOND JOHN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | VERIFICATION |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FOFBAKERS HOLDING COMPANY, LLC,** | ) | |
| **JABEZBAKER, LLC, BBQ CONSULTING LLC,** | ) | |
| **JAMES A. BAKER a/k/a AL BAKER,** *individually*, | ) | |
| **BRITTANI BO BAKER,** *individually*, **and** | | |
| **SABRINA BAKER,** *individually*, | | |
| **Defendants.** | | |

**DAYMOND JOHN,** being duly sworn, deposes and says:

I am a named plaintiff in the above captioned matter, as well as an officer of DF Ventures, LLC, the other named plaintiff. I have read the foregoing Verified Complaint and know the facts stated therein to be true. I base this verification on my own knowledge, information and belief, and as to those matters, I believe them to be true. The grounds of my knowledge, information and belief are derived from my position as officer of DF Ventures, LLC, my personal involvement in the events underlying this litigation, and general investigation into the facts and circumstances described in the Verified Complaint, including, without limitation, my review of relevant records and conversations with relevant parties.

I declare under penalty of perjury that the foregoing is true and correct.

_____
DAYMOND JOHN

May 25, 2023
_____
DATE